(107 N. W. 51.)

---

James Mickels v. Martha M. Fennell, Known as Martha M. Mickels.

Opinion filed February 20, 1906.

**Void Marriage — Statutory Action for Annulment.**

1. An action to annul a marriage, which is void because the defendant had contracted a prior marriage which was still in force, is not an an action to annul a marriage for fraud within the meaning of the statutes relating to that subject, even though it is alleged and found that the plaintiff was the innocent victim of defendant's fraudulent representation that her former husband had died.

**Same — Custody of Children.**

2. Section 2734, Rev. Codes 1899, relating to the custody of the children of an anulled marriage, applies only in actions for the annulment of a voidable marriage, in which the fraud or force are essential facts to be proved in order to establish the cause of action.

**Same — Rights and Obligation of Parents.**

3. By virtue of section 2733, Rev. Codes 1899, the children resulting from a marriage annulled for any cause are legitimate, and both parents have the same rights and are under the same obligations with respect to such children as if the marriage were valid.

**Same — Evidence.**

4. Evidence examined, and *held,* that the mother has a better right to the custody of the child in question than the father.

*B. D. Townsend,* for appellant.

*R. A. Stuart* and *McGlory & Barnett,* for respondents.

Engerud, J. Defendant has appealed to this court from a judgment declaring the nullity of a pretended marriage theretofore existing between herself and plaintiff, and awarding to plaintiff the custody of the child which resulted from the union. The case is here for trial de novo.

It is conceded that the marriage was bigamous, and void for that reason. The only controversy is as to the custody of the child. Plaintiff claims that he was induced to enter into the pretended marriage by reason of defendant's fraudulent representation that her former husband was dead. This contention was sustained by

the trial court, and hence the custody of the child was awarded to plaintiff pursuant to the provisions of section 2734, Rev. Codes 1899. That section provides: "The court must award the custody of the children of a marriage annulled on the ground of fraud or force to the innocent parent, and may also provide for their education and maintenance out of the property of the guilty party." Each party charges the other with being an unfit person to have the custody of the child, but no findings were made on that subject. In the view taken of the case by the trial court such findings were immaterial.

The appellant contends, first, that the finding of fraud is not warranted by the evidence; and, second, that if a deceit was practiced upon plaintiff he is barred from relief on that ground because he continued to freely cohabit with defendant after knowledge of the deceit. We are fully convinced from a careful examination of the evidence, that appellant's contention must be sustained for reasons which will appear in subsequent portions of this opinion. Discussion of that subject would, in the view we take of the case, be unnecessary were it not because the facts relative to the alleged fraud have a bearing on the question of the comparative fitness of the two opposing parents to be intrusted with the custody of the child. In our opinion, section 2734 does not govern the disposition of the child in this case, even if the plaintiff had been the innocent victim of defendant's deceit. The allegations of the complaint as well as the findings and the undisputed facts show that this pro forma marriage was not one which could be annulled for fraud within the meaning of the statutes of this state on that subject.

Plaintiff and defendant were married on November 27, 1901, and the child in controversy was born October 24, 1902. At the time of this marriage the defendant was and still is the wife of one George Fennell, to whom she was duly married in 1890, and with whom she lived as his wife until February, 1901. She and Fennell separated at that time, but there has never been any divorce. "A marriage contracted by a person having a former husband or wife living, if the former marriage has not been annulled or dissolved, is illegal and void from the beginning unless such former husband or wife was absent, and believed by such person to be dead for a period of five years immediately preceding." Section 2723, Rev. Codes 1899. In this case only about nine months had elapsed since

the separation from George Fennell, and hence the pro forma marriage was an absolute nullity. Although the marriage ceremony was a nullity it had the appearance of validity, and therefore an action may be maintained by either party to it or by the former husband for the purpose of obtaining a decree declaring the fact of nullity. Section 2731, subdivision 2, and section 2732, subdivision 2, Rev. Codes 1899. It is wholly immaterial in an action for annulment on this ground whether the party capable of making the contract was deceived by the other party or not. The pretended marriage is a nullity for all time and under all circumstances, whether questioned directly or collaterally. The statute recognizes five other grounds for annulling a marriage. Section 2731, subdivisions 1, 3-6, Rev. Codes 1899. These grounds are: That the party in whose behalf relief is sought was under the age of legal consent and marriage without the consent of his or her parent or guardian, unsoundness of mind, fraud, force, incurable physical incapacity. It will be noticed that where relief is sought on any of these five grounds, the right to relief is conditional. Where the marriage is voidable for infancy, mental incapacity, fraud or force, the marriage becomes valid if, after the removal of the disability, or discovery of the fraud or termination of the force, the injured party freely continues the marital relation. For any of these five causes relief can be obtained only by the injured party or in his or her behalf, by a relative or guardian, and, save as to mental incapacity, the relief must be sought within four years after the marriage or discovery of the fraud or withdrawal of the force. Section 2732, subdivisions 1, 3-5. In short the statute plainly recognizes and gives effect to the distinction between a pretended marriage that is an utter nullity and one that is only voidable. Subdivision 2 of section 2731 and subdivision 2 of section 2732, refer to void marriages that can never become valid. All the other subdivisions refer to marriages which, although void in their inception because the aggrieved party was incapable of consenting, or because his or her apparent consent was obtained by fraud or force and hence not free, may, nevertheless, become valid by ratification. As in any other contract in form not binding for want of the element of free consent, a marriage void for that reason may be affirmed and become valid from the beginning, if after the incapacity is removed or the force withdrawn, or the fraud discovered, the aggrieved party freely gives his or her consent. This distinction between an action

to annul a voidable marriage, and an action to establish the nullity of one that is and forever must be absolutely void, must be kept in mind and applied in construing section 2734. With this distinction in mind, it is apparent that section 2734 applies only to actions where a voidable marriage is annulled for fraud or force—that class of actions where the fraud or force is an essential fact to be proved in order to sustain the cause of action. We are not disposed to extend the arbitrary rule established by this section further than the express language of the statute demands. It follows that the allegations and findings with respect to fraud, even if true, are immaterial, and section 2734 has no application to this case.

Although the marriage was a nullity, the child is in law legitimate. Section 2733, Rev. Codes 1899, declares: "When a marriage is annulled children begotten before the judgment are legitimate and succeed to the estate of both parents." The effect of this humane provision is to protect the offspring of an annulled marriage from the stain and disability of bastardy. It places both parents of such child in the same position with respect to the child and the latter in the same relation to each of them as if it had been born in lawful wedlock. Watts v. Owens, 62 Wis. 512, 22 N. W. 720; Harris v. Harris, 85 Ky. 49, 2 S. W. 549; Graham v. Bennett, 2 Cal. 503. The general rules, therefore, which should govern in awarding the custody of this child are those found in section 2817, Rev. Codes 1899: "In awarding the custody of a minor or in appointing a general guardian the court or judge is to be guided by the following considerations: (1) By what appears to be for the best interests of the child in respect to its temporal and its mental and moral welfare; and if the child is of sufficient age to form an intelligent preference, the court or judge may consider that preference in determining the question. (2) As between parents adversely claiming the custody or guardianship, neither parent is entitled to it as of right, but, other things being equal, if the child is of tender years, it should be given to the mother; if it is of an age to require education and preparation for labor or business, then to the father.' The child is a girl, and she was about nine months old at the time of the trial of this action. Respondent asserts that this harsh proceeding, if not required by section 2734, was imperatively necessary for the welfare of the child, by reason of the depravity and poverty of the mother. This charge of depravity is based wholly on the inferences to be drawn

from the facts disclosed with reference to the manner in which the defendant became separated from her husband, George Fennell, and contracted and continued marital relations with plaintiff. There is no testimony directly attacking her reputation or conduct except so far as those circumstances may detract from her good name, and impute dishonest conduct. It is manifest that if the plaintiff is no better than the woman he traduces, then it will avail him nothing to prove her to be of bad character. Other things being equal, the mother has the better right to so young a child.

The defendant's explanation of the circumstances under which she parted with Fennell in the spring of 1900 is in all material particulars undisputed, although Fennell was present at the trial and testified as a witness. She was obliged to do cooking and washing for the coal miners, among whom she and her husband lived, in order to support herself and a boy then less than five years old, the issue of her marriage to Fennell. She finally parted from Fennell because, as she claims, he did not try to support her. He seems to have acquiesced in this decision and went away without disclosing to her his destination. Shortly afterwards she also left and came to this state where she sought employment as a domestic servant and thereby supported herself and son until she met and married this plaintiff. There is not a scintilla of evidence that she was anything but a virtuous, hard working woman up to this time. Whether her parting with Fennell was in law a desertion on her part or his is immaterial. There was clearly much to justify her abandonment of that worthless husband, and there is nothing therein that indicates immorality. The plaintiff met her while she was working for one of his neighbors about five or six weeks before he married her. He was a widower and engaged her as housekeeper. He proposed marriage and she accepted. She testified that when plaintiff proposed marriage she told him fully and fairly all the evidence upon which she based her belief that her former husband had died since the separation. Her testimony on this point is clear, full and specific. The plaintiff admits that she told him of her former marriage to and separation from Fennell, but claims that he accepted, without inquiry as to the circumstances, her statement that her former husband was dead. The following quotation from his direct examination will sufficiently disclose how unsatisfactory and improbable was his testimony on this subject: "A. The first time I met the defendant

I asked her the question whether her husband was dead, and she said he was, afterwards she told me the best evidence she could obtain that ne was dead, that she didn't see him dead, nor did she see him buried. Q. Did she tell you she believed he was dead? A. I am not positive as to that, but she always maintained that he was dead. Q. Did she tell you whether she had taken any steps to find out whether he was dead? A. Nothing more than what I have said that the best authority that she could obtain he was dead. Q. Did she tell you what steps she had taken, if any, did she tell you what that authority was? No, sir; she did not to my knowledge. Q. Did you at that time believe her statements that her husband was dead? A. I did. Q. And married her under that belief? A. Yes, sir." On cross- examination, when pressed for a specific admission or denial of some statement, which the defendant claimed she made relative to that subject, he generally answered that he had no recollection of the alleged circumstance or statement. Even if true his version of the representations made by the defendant falls short of showing a fraud. If his version is true, he relied on her mere belief confessedly based on undisclosed hearsay evidence.

His testimony on this subject is well-nigh unbelievable, even if uncontradicted. His improbable version of the transaction is contradicted, and the defendant's version corroborated, by an oral admission made in the presence of a disinterested witness, and by a written admission in a document which he freely executed. That his desire for the defendant's companionship, regardless of consequences, exerted a more powerful influence upon his conduct than any scruples he may have had as to the legitimacy of his relations with the defendant, is demonstrated by the fact that he freely cohabited with the defendant after he knew that her former husband was still alive. He confesses that after he learned that fact he not only continued his cohabitation with defendant but also that after she had been forced by his brutality to leave the shelter of his house, he went in search of her, and by means of fair promises persuaded her to return. If the defendant had been guilty of fraud the plaintiff waived and condoned it in the most unequivocal manner. The evidence proves beyond doubt that the defendant fully informed the plaintiff of the facts and circumstances upon which she founded her belief that her former husband was dead. It is true that she manifested undue credulity; and that her failure

to make sufficiently diligent investigation as to the truth of the information she had received gives ground for doubt as to whether she entertained her professed belief in good faith.  It ill becomes this plaintiff, however, to question the good faith of this woman for these reasons.  He accepted without hesitation or further inquiry the statement of this defendant as to the infomation she had received as sufficient proof of death.  If the insufficiency of the information and lack of diligent inquiry proves bad faith and immorality on her part, it is stronger proof of his guilt of like bad faith and depravity.  Indeed we believe the defendant told the truth when she testified that whatever doubt of her husband's death, or scruples as to the propriety of the proposed marriage to plaintiff that had previously existed in her mind were overcome by the assurances of the plaintiff that the information she had received left no room for doubt or scruples and was sufficient in law to justify her in remarrying.

The fact that the defendant cohabited with the plaintiff after her former husband was known to be alive does not prove her character worse than his.  He confessedly persuaded and induced her to do so by holding out to her the glittering promise of protection, and a home for herself and children.  She was led to hope that the marriage to Fennell would be dissolved by means of a suit for divorce, to be followed by a lawful marriage to plaintiff.  In this manner the illegality of her relations with plaintiff would be cured and disgrace to herself and children to a great extent at least, avoided.  Is a woman to be condemned for yielding to such a temptation?  Her needy, homeless and friendless condition  are powerful pleas in her favor, which at least mitigate, if they do not justify her misconduct.  What shall be said of the plaintiff's conduct  in  whose behalf no such plea is possible?  The most shameful of all his many disgraceful acts disclosed by this record is that he did not fulfill the promises by which he induced the defendant to return to his home.  We shall not pursue the subject further.  Suffice it to say that the defendant is no worse than the plaintiff, and if she has lost her good name it is due to her unfortunate association with this plaintiff.  No other wrongdoing is proven against her.  It appears to us that she is a woman more sinned against than sinning.

The shameful and brutal conduct of this plaintiff disclosed by the testimony in this case, and which he does not attempt to deny

or excuse, if it does not stamp him as a person unfit to have the custody of this child at least makes it doubtful if abode in his home is better for the child's welfare than the care of a mother. If the mother has become unfit to keep her child, there is ample remedy in another proceeding. As between the parties to this litigation the mother has the better right upon the record presented by this appeal. The poverty of the defendant is no reason for denying her claims as a mother in favor of the more prosperous parent. The child is legitimate, and the father can be compelled to provide for the support and education of the child if the mother's means are inadequate.

The judgment appealed from will be modified, so as to award the custody of the child to the defendant. The appellant will recover the taxable costs in both courts. All concur.