MABEL KAWABATA, Respondent, v. ROY KAWABATA, Appellant.

(189 N. W. 237.)

**Marriage — requirements of complaint to annul marriage for fraud stated.**

Where it is sought to have a marriage annulled under subdivision 4, § 4368, Comp. Laws 1913, on the ground that the consent thereto was obtained by fraud, the complaint must set forth the facts showing such fraud as is contemplated by the statute; also the time and place where the marriage was celebrated and the date of the discovery of the alleged fraud.

Opinion filed June 30, 1922.

Appeal from the District court of Ward county, *Lowe,* J.

The defendant appeals from an order overruling a demurrer to the complaint.

Reversed.

*Dudley L. Nash,* for appellant.

*E. T. Burke* and *John E. Burke,* for respondent.

"Although the jurisdiction of the courts to annul marriage may in certain cases exist independently of statute and in virtue of their general equity powers, these powers may in this particular be either enlarged or restricted by statutes, which must then be looked to as the measure of their authority. 29 Cyc. 900 and cases cited.

"Imposition in the nature of a fraud may also be ground for annuling the marriage, especially where it was exerted by playing upon the party's superstitions or religious delusions." Orchardson v. Cofeild, 171 Ill. 14 N, E. 197; 63 Am. St. Rep. 211, 40 L. R. A. 256.

Per Curiam. This is an action for the annulment of a marriage on the ground that the consent to such marriage was obtained by fraud. The defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was overruled, and defendant appeals.

The ground on which annulment is sought is that the plaintiff's consent to the marriage was obtained by virtue of a false representation made by the defendant that he was a citizen of the United States. It is contended by the defendant that the alleged misrepresentation as to citizenship does not constitute fraud within the purview of the above quoted statute, and that hence the complaint fails to state a cause of action for the annulment of a marriage. It is asserted that fraud, as contemplated by this statute, must relate to something which goes to the essentials of marriage relation itself, and that misrepresentations as to other matters, however important such as to birth or condition of life, do not affect the validity of a marriage. In support of this many authorities are cited, among which are 2 Kent, Com. 77; Schouler on Domestic Relations § 23; Nelson on Divorce and Separation, § 616; 1 Bishop on Marriage and Divorce, § 167; Chipman v. Johnston, 237 Mass. 502, 130 N. E. 65, 14 A. L. R. 119; Lyon v. Lyon, 230 Ill. 371, 82 N. E. 850, 13 L. R. A. (N. S.) 996, 12 Ann. Cas. 25; Trask v. Trask, 114 Me. 60, 95 Atl. 352; note 14 A. L. R. p. 121 et seq.

A majority of the court, namely, Mr. Chief Justice Birdzell and Associate Justices Christianson and Robinson, are inclined to the view that the rule invoked by the defendant is applicable, and that the alleged false representation set forth in the complaint does not constitute such fraud as is contemplated by the statute relating to the annulment of marriage; but the court does not find it necessary to base its decision in this case on the ground stated, for the members of the court are all agreed that there are other reasons why the complaint fails to state a cause of action. Under the statute a marriage may be annulled by an action in the district court, for the reason, among others :

"When the consent of either party was obtained by fraud, unless such party afterward, with full knowledge of the facts constituting the fraud freely cohabited with the other as husband or wife."   Subdivision 4, § 4368, C. L. 1913.

But action for annulment of marriage on this ground must be brought within four years after the discovery of the facts constituting the fraud. Subdivision 4, § 4369, C. L. 1913.   It is a general rule (subject to certain exceptions) that the validity of a marriage is to be determined by the law of the place where it was contracted or celebrated.   26 Cyc. 832; 18 R. C. L. p. 388; 19 Am. & Eng. Ency. L. p. 1211 et seq.; Garcia v. Garcia, 25 S. D. 645, 127 N. W. 586, 32 L. R. A. (N. S.) 424, Ann. Cas. 1912C, 621.   This rule is embodied in the statutory law of this state.   Section 4366, C. L. 1913.

The laws of this state relative to marriage and divorce recognize that (1) certain marriages are void; (2) others voidable; and (3) that all marriages which do not fall within these two classes are valid.   The different statutory provisions relating to void and voidable marriages were considered, and to some extent quoted, in Woodward v. Blake, 38 N. D. 38, 164 N. W. 156, L. R. A. 1918A, 88, Ann. Cas. 1918E, 552.   A marriage which is void or voidable may be annulled by an action for annulment as prescribed by the statute.   A valid marriage can be dissolved only (1) by the death of the parties; or (2) by a judgment of a court of competent jurisdiction decreeing a divorce of the parties.   Section 4379, C. L. 1913.   A divorce may be decreed only for one of the causes prescribed by the legislature.   9 R. C. L. p. 269.   An action for annulment is predicated upon some ground existing at the time the marriage was entered into, and the decree therein in effect declares that a valid marriage never existed.   An action for a divorce is predicated upon grounds arising after the marriage, and the decree therein, in effect, declares the

marriage valid and dissolves it. 19 Am. & Eng. Ency. L. p. 1218; 9 R. C. L. p. 267.

In view of these fundamental propositions it seems manifest that a petition for the annulment of a marriage must allege the place where the marriage was contracted or celebrated; and that is the rule laid down by the authorities. The Encyclopedia of Pleading and Practice (13 Ency. Pl. & Pr. p. 875) says:

"In every petition for annulment the plaintff must allege the marriage sought to be annulled, by stating the time and *place* where the marriage was celebrated."

The complaint in this case does not show where the marriage was contracted or celebrated. So far as we know, the marriage may have been celebrated in any one of the states of the Union, or it may have been celebrated in some foreign country.

This action was commenced in February, 1921. The complaint shows that the plaintiff and defendant were married on April 27, 1916. The complaint does not show when the facts constituting the alleged fraud were discovered. There is merely a statement that "the time in which an action for the annulment of this marriage has not expired." Actions for the annulment of marriage are not governed by the statute of limitations embodied in the Code of Civil Procedure. The period of limitations prescribed for such actions are embodied in the statute giving the right of action. Hence we believe that the limitations so prescribed affect the right or cause of action itself, and not merely the remedy, and that, if the right granted by the statute is not asserted within the limited period, it ceases to exist. Mayer v. Walsh, 111 U. S. 31, 4 Sup. Ct. 260, 28 L. ed. 340. Hence, when the complaint shows that the marriage sought to be annulled on the ground of fraud was contracted more than four years before the action for annulment is brought, it should further appear from the averments therein when the fraud was discovered, and the date of discovery must be within four years before the commencement of the action. The Encylopedia of Pleading and Practice (13 Ency. Pl. & Pr. p. 876) says:

"The facts constituting the fraud, reliance upon the misrepresentations of the defendant, *the date of discovery of the fraud,* and the subsequent conduct of the parties should be alleged as in actions for equitable relief from contracts procured by fraud."

It follows, from what has been said, that the trial court should have sustained the demurrer, and the order appealed from is reversed.

BIRDZELL, C. J., and CHRISTIANSON, BRONSON, and ROBINSON, JJ., concur.

GRACE, J. (specially concurring). Plaintiff brought this action to annul her marriage to the defendant. She claims a legal right to have the marriage annulled on account of certain fraudulent representations of the defendant made to her in procuring her consent to the marriage:

"The plaintiff alleges that her consent to said marriage was obtained by fraud, and that, after obtaining full knowledge of the facts constituting the fraud, she has not lived nor cohabited with the defendant as his wife; that the fraud alleged above consisted in part in that the defendant, prior to the marriage, told the plaintiff that he was a citizen of the United States; that he well knew that he was not a citizen of the United States, and that he could not become a citizen of the United States; that defendant made such statements, well knowing that the same was false, and with the intent to deceive the plaintiff; that the plaintiff relied on such statement, believed it, and gave her consent under the impression that she did not lose her citizenship by said marriage; that, had she known the said statement to be untrue, she never would have entered into said marriage contract with the said defendant. Plaintiff alleges that she is informed and believes that on account of her said marriage she has alienated her citizenship from her native country, and that she does not willingly do so; that she did not do so."

It is further alleged that the time in which an action for annulment might be brought has not expired, that prior to her marriage her name was Mabel Jones, and that she desires to have that name restored to her. The prayer for relief is that the marriage be annulled, and she be granted a decree of nullity, and costs, disbursements, and attorney's fees, and that the property acquired by the plaintiff and defendant by their joint labor be divided between them. To the complaint a demurrer was entered on the ground that the same does not state sufficient facts to constitute a cause of action. The trial court made an order overruling the demurrer with leave to answer, and further ordered that defendant pay to the plaintiff within 10 days $150 as attorney's fees and $50 as costs in the action.

Our statute (§ 4368, C. L.) permits the annulment of marriage for certain causes. It provides that:

"A marriage may be annulled by an action in the district court to obtain a decree of nullity for any of the following causes existing at the

time of the marriage."

The cause for annulment provided by subdivision 4 of that section is as follows:

"When the consent of either party was obtained by fraud, unless such party afterwards, with full knowledge of the facts constituting the fraud, freely cohabited with the other as husband or wife."

As above stated, the demurrer was on the ground that the complaint does not state sufficient facts to constitute a cause of action. The complaint, indeed, is not a model of pleading. It would seem that it was drafted without careful investigation of the facts which should have been fully and with certainty pleaded. The case was presented to this court, and an oral argument had. The contention of the defendant is to the effect that there is a failure to plead sufficient facts in the complaint to constitute fraud. The fraudulent representations, if any, center about the following alleged fact, set forth in the complaint:

"That the defendant, prior to the marriage, told the plaintiff that he was a citizen of the United States, that he well knew that he was not a citizen of the United States, and that *he could not become a citizen of the United States.*"

This language needs careful consideration, to ascertain the meaning intended to be conveyed by it. It will be noticed that plaintiff alleges that her consent to the marriage was obtained by fraud, which consisted of the above statement and fraudulent representation; that the defendant knew the statement was false, and that he made it with the intent to deceive the plaintiff, who relied upon it and gave her consent under the impression that she did not lose her citizenship by said marriage. Assuming the allegations of the complaint to be true, the question arises: Was the fraudulent representation of the defendant to the plaintiff that he was a citizen, when in truth he was not, such a material representations as to constitute fraud, when used in obtaining her consent to the marriage? This may be answered by determining how the marriage affected her status as a citizen; that is, whether she would wholly lose her citizenship by the marriage, if she had freely consented to it. It would seem that a fraudulent representation which would operate to deprive her of her citizenship against her consent, and except for which she would not have consented to the contract of marriage, constituted an obtaining of her consent by fraud, under subdivision 4 of § 4368. The act of Congress of March 2, 1907 (chap. 2534, § 3, 34 Stat. 1228 (U. S. Comp. St. § 3960), reads:

"That any American woman who marries a foreigner shall take the nationality of her husband.. At the termination of the marital relation she may resume her American citizenship, if abroad, by registering as an American citizen within one year with a consul of the United States, * * * or, if residing in the United States at the termination of marital relation, by continuing to reside therein."

This section was construed and upheld in the case of MacKenzie v. Hare, 239 U. S. 299, 36 Sup. Ct. 106, 60 L. ed. 297, Ann. Cas. 1916E, 645, affirming the decision of the Supreme Court of California in the same case, which is reported in 165 Cal. 776, 134 Pac. 713, L. R. A. 1916D, 127, Ann. Cas. 1915B, 261.   See, also 239 U. S. 299, 30 Sup. Ct. 106, 60 L. ed. 297, Ann. Cas. 1916E, 645; L. R. A. 1916D, 127; Ann. Cas. 1915B, 261, and note.   To be a citizen of the United States, either by birth or naturalization, is a priceless privilege.   It possesses a moral value to the possessor, which is largely indeterminable.   The average citizen of the United States, whether native-born or naturalized, considers it one of his highest privileges.   It gives him the feeling that his country places no impediment in the way of his advancement, though he may have been born a child of poverty.   He thinks of his right of equality before the law; his freedom of action under just legal restraint; his opportunity to freely write and speak the thoughts of his mind, being responsible only for an abuse of those privileges.   He thinks of the fact that there is largely no limitation upon the official position or other place of prominence or of trust that he may acquire, except such as are prescribed by his own limitations of intellectuality or other personal qualites.   He would give up all else rather than lose such a privilege.   We have known of those whose career was one of long and continued criminality, and who had committed the deepest and blackest of crimes, denoting great moral turpitude.   We have seen them in the penitentiary while paying the penalty of their transgressions, required of them by the majesty of the law.   We have listened to their plea for clemency on their application for pardon, where they would claim they had expiated their offense by sufficient suffering occasioned by restraint of their freedom; but we have ever noticed that a plea of mercy uniformly was accompanied with one for restoration of citizenship.

It would seem that, if such unfortunates feel that they cannot, after their liberation, face the world unless again in the possession of their citizenship; that if they regard themselves without it as unable to survive in the waves of scorn which they encounter as they again take up the

voyage on life's ocean, if they consider themselves without it as a pilotless bark on an angry sea—can it be said that it is not .fraud to take such a privilege from one who, so far as the record shows, is a reasonably good citizen? We think not. Mr. Justice McKenna, speaking for the Supreme Court of the United States in MacKenzie v. Hare, said:

"We concur with counsel that citizenship is of tangible worth, and we sympathize with plaintiff in her desire to retain it and in her earnest assertion of it."

We are of the opinion that the complaint liberally construed constitutes a cause of action.

The order of the court requiring defendant to pay attorney's fees in the amount stated in the order was a matter within its discretion. However, under the decision of Bailey v. Bailey, 22 N. D. 554, 134 N. W. 747, the attorney's fees should be payable to the plaintiff, and not the attorney.

The complaint in the case does not show where the marriage was contracted or consummated. We are of the opinion that it should have shown this. It should also have shown the date of the marriage. In addition to containing these requirements, the complaint should have clearly and concisely stated the facts constituting the fraud.