FIRST NATIONAL BANK IN GRAND FORKS, a corporation, as Guardian of the Estate of Edith Mae Charon, an Incompetent Person, Plaintiff and Respondent,

v.

NORTH DAKOTA WORKMEN'S COMPENSATION BUREAU, Defendant and Appellant.

No. 7490.

Supreme Court of North Dakota.

Feb. 23, 1955.

Paul Benson, Atty. Gen., Paul M. Sand, Asst. Atty. Gen., for defendant and appellant.

Day, Stokes, Vaaler & Gillig, Grand Forks, for plaintiff and respondent.

MORRIS, Judge.

This is an appeal from a judgment directing the North Dakota Workmen's Compensation Bureau, appellant herein, to pay to the respondent certain sums for the use and benefit of Edith Mae Charon, an incompetent person.

The following facts are pertinent to the issue on appeal: John Alfred Charon died on November 16, 1946, from injuries received in the course of his employment. An action was instituted in the District Court of Grand Forks County by Hattie Charon, guardian of Edith Mae Charon, an incompetent person, against the North Dakota Workmen's Compensation Bureau wherein the court found that Edith Mae Charon, daughter of John Alfred Charon, deceased, was born on September 3, 1925; that she was an incompetent person dependent upon the deceased, over eighteen years of age, and was incapable of self-support. On May 18, 1950, judgment was rendered in that action directing the bureau to pay the guardian of Edith Mae Charon $8.75 per week until Edith Mae Charon became competent or capable of self-support.

On July 14, 1950, a marriage was solemnized at East Grand Forks, Minnesota, between Edith Mae Charon and Joseph J. Witz. On July 24, 1950, an action was commenced in the District Court of Grand Forks County in the name of Edith Mae Witz by Hattie Charon, her guardian, to annul the marriage. In that action the court found that at the time of the marriage plaintiff was incapable of contracting marriage and was incompetent, both at the time of the marriage and the time of rendition of judgment. On August 22, 1953, it was decreed that the marriage be "in all things annulled and declared void."

After the marriage the Workmen's Compensation Bureau discontinued the benefit payments. Payments were resumed from the date of the annulment.

Upon the trial in this proceeding the court, with the acquiescence of counsel, stated the issue as follows:

"If I understand the situation here correctly the only issue before the Court at this time is whether or not the Workmen's Compensation Bureau should pay the monthly installments from the time that Edith Mae Charon was married or attempted to be married to one Joseph Witz and up until the time that such

marriage was annulled by the District Court of Grand Forks County, North Dakota, that period being from July 15, 1950 to August 22, 1953."

The action to annul the marriage was commenced in Grand Forks County, North Dakota, ten days after the marriage was solemnized. The court found:

"that at the time of said marriage, the plaintiff was incapable of contracting marriage, was incompetent and now is an incompetent person."

The court further found:

"That Edith Mae Witz does not, and on July 14, 1950, did not have sufficient mental capacity to consent to or understand a marriage contract into which she entered, that she did not, and now does not, have sufficient mental capacity to enter into a contract of marriage under the laws of the State of Minnesota or under the laws of the State of North Dakota."

In support of its contention that it is not liable to pay benefits between the date of the marriage and the date of the annulment the appellant cites Section 518.02, Minnesota Statutes Annotated, which provides that when a party to a marriage is incapable of assent thereto for want of understanding, the marriage may be annulled at the suit of the injured party and shall be void from the time its nullity is adjudged.

Turning to the statutes of North Dakota we find that under Section 14–0401, NDRC 1943

"A marriage may be annulled by an action in the district court to obtain a decree of nullity for any of the following causes existing at the time of the marriage: * * *

"3. That either party was of unsound mind, unless such party, after coming to reason, freely cohabited with the other as husband or wife; * * *."

Section 14–0308, NDRC 1943 provides:

"All marriages contracted outside of this state, which are valid according to the laws of the state or country where contracted, shall be valid in this state. This section shall not apply when residents of this state contract a marriage in another state which is prohibited under the laws of North Dakota."

We think that it may be fairly inferred from this record that at the time of the marriage the parties thereto were residents of the State of North Dakota. A feeble minded woman under the age of forty-five years is prohibited from marrying by the provisions of Section 14–0307, NDRC 1943. Edith Mae Charon was such a person and her marriage to Joseph J. Witz was a prohibited marriage.

■ It is the policy of this state, as expressed by Section 14–0308, supra, that the validity of marriages prohibited by the laws of this state when contracted outside of North Dakota by residents of this state will be determined according to our laws. In an annulment suit involving such a prohibited marriage, our statutes will govern, whether the marriage is void or voidable.

"In an annulment suit, questions as to the existence and validity of the marriage are to be determined by the law in effect at the time when and the place where the marriage was contracted or solemnized, except in the case of a marriage entered into in disregard of the law or in violation of a strong public policy of the state of domicile of the parties." Nelson on Divorce, Section 31.08.

■ A state has the prerogative to regulate by legislation the marital status of its own citizens domiciled therein to the extent of prohibiting certain marriages upon the ground of public policy and may give effect to such prohibition in nullifying a marriage performed in violation thereof though solemnized in another state. McDonald v. McDonald, 6 Cal.2d 457, 58 P.2d 163, 104 A.L.R. 1290.

■ The domicile of the parties being in this state and the marriage being prohibited by the laws of this state, our statutes will be applied and will govern the court in determining and decreeing the nullity of the marriage. Stevens v. Stevens, 304 Ill. 297, 136 N.E. 785; Ertel v. Ertel, 313 Ill.App. 326, 40 N.E.2d 85; Conflict of Laws, Beale, Section 136.1.

■ When Edith Mae Charon married her right to compensation from the Workmen's Compensation Fund ceased. Section 65-0517, NDRC 1943. It is now contended in her behalf that when her marriage was annulled the effect of the annulment related back to the date of her marriage and that she is entitled to have her compensation payments reinstated as of that date.

■ The appellant contends that the marriage under consideration was voidable and not void. It is pointed out that under Section 14-0401, paragraph 3, NDRC 1943, the marriage of a person of unsound mind may not be annulled on behalf of a party who after coming to reason freely cohabited with the other, and that under Section 14-0402, paragraph 3, annulment of such a marriage could not be had after the death of either party. These statutory provisions indicate that the marriage is voidable. This is the view expressed by this court in Mickels v. Fennell, 15 N.D. 188, 107 N.W. 53. It has already been noted that while marriages of feeble minded persons are prohibited, Section 14-0307, NDRC 1943, such marriages are not declared void as is done in the case of incestuous marriages. Section 14-0303, NDRC 1943. A void marriage is completely invalid for every purpose. It can be attacked either directly or collaterally, while a voidable marriage can only be questioned as to its validity by a direct attack such as is provided by our annulment statute. There has been such an attack upon this marriage and it has been decreed to be "in all things annulled and declared void."

The appellant next argues that because the marriage was voidable under North Dakota law the decree annulling it can only be effective from the date of its entry and does not relate back so as to render the marriage void from its inception. This assertion cannot be sustained. Under our statute, Section 14-0401, NDRC 1943, a decree of nullity can only be obtained for a cause existing at the time of marriage.

"If parties are declared incapable of contracting marriage, then no valid contract can be made by them." Woodward v. Blake, 38 N.D. 38, 164 N.W. 156, 158, L.R.A.1918A, 88, Ann. Cas.1918E, 552.

"An action for annulment is predicated upon some ground existing at the time the marriage was entered into, and the decree therein in effect declares that a valid marriage never existed." Kawabata v. Kawabata, 48 N.D. 1160, 189 N.W. 237, 238.

■ It is generally held that a decree of annulment has the effect of avoiding the marriage from the beginning. Steerman v. Snow, 94 N.J.Eq. 9, 118 A. 696; Eisenberg v. Eisenberg, 105 Pa.Super. 30, 160 A. 228; Lindsay v. Lindsay, 148 Wash. 31, 267 P. 777; Anonymous v. Anonymous, 7 Terry 458, 46 Del. 458, 85 A.2d 706; Saunders v. Saunders, Sup., 63 N.Y.S.2d 880; DeRosay v. DeRosay, 162 Pa.Super. 333, 57 A.2d 685; Short v. Short, Ohio App., 102 N.E.2d 719; Southern Ry. Co. v. Baskette, 175 Tenn. 253, 133 S.W.2d 498.

California has the same statutes regarding annulment of marriage that we are here considering. Sections 82 and 83, California Civil Code. California decisions are therefore persuasive. In McDonald v. McDonald, 6 Cal.2d 457, 58 P.2d 163, 165, 104 A.L.R. 1290, it is said:

"A familiar analogy exists in the law of contracts. Thus a contract may be voidable and subject to rescission, because of some infirmity in its procurement, but, unless attacked by notice of rescission or by suit, will not be avoided, but will remain binding. Garcia v. California Truck Co., 183 Cal. 767, 192

P. 708. So with voidable marriages. The parties may or may not exercise their legal right to have them annulled, and, if they do not exercise such right, the marriages are binding; but, when annulment is sought, it can be granted only if there was some element of invalidity in the contracting of the marriage. Thus, in Millar v. Millar, 175 Cal. 797, 806, 167 P. 394, 398, L.R.A. 1918B, 415, Ann.Cas.1918E, 184, it is stated: 'Strictly speaking the word "divorce" means a dissolution of the bonds of matrimony, based upon the theory of a valid marriage, for some cause arising after the marriage, while an annulment proceeding is maintained upon the theory that, for some cause existing at the time of marriage, no valid marriage ever existed. This is true even though the marriage be only voidable at the instance of the injured party, or in the words used in In re Estate of Gregorson, 160 Cal. (21) 25, 116 P. 60, L.R.A.1916C, 697, Ann.Cas. 1912D, 1124, "capable of being annulled." And the decree of nullity in such a proceeding determines that no valid marriage ever existed.' See, also, Goodrich, Conflict of Laws, p. 302."

█ Some exceptions have been made to the rule that as to a voidable marriage a decree of annulment makes the marriage void from its inception. Both the rule and the exceptions are ably discussed in Callow v. Thomas, 322 Mass. 550, 78 N.E.2d 637, 2 A.L.R.2d 632. In most instances these exceptions are concessions to equitable principles which have no application to this case. We follow the rule and hold that the decree of annulment made the marriage void ab initio. Edith Mae Charon is entitled to receive payment from the Workmen's Compensation Bureau as though no marriage ceremony ever took place. The judgment appealed from is affirmed.

BURKE, C. J., and SATHRE, JOHNSON and GRIMSON, JJ., concur.