Gretta N. PEARSALL, Plaintiff,

v.

Marion B. FOLSOM, Secretary of the Department of Health, Education and Welfare, Defendant.

No. 34839.

United States District Court
N. D. California, S. D.

Feb. 10, 1956.

Malovos, Mager, Newcomer & Chasuk, San Jose, Cal., for plaintiff.

Lloyd H. Burke, U. S. Atty., William B. Spohn, Asst. U. S. Atty., San Francisco, Cal., for defendant.

ROCHE, Chief Judge.

This action is brought under § 205 (g) of the Social Security Act, as amended (hereinafter referred to as the "Act"), 42 U.S.C.A. § 405(g), which provides for judicial review of a "final decision of the Administrator". The decision in this case was rendered on June 13, 1955 and became final on June 30, 1955 when plaintiff's request for review was denied.

The question for decision in this case is as follows: When "mother's insurance benefits" are awarded to a claimant as the widow of wage earner, and such benefits are terminated by reason of her remarriage, is her right to benefits revived upon her procurement of an annulment of the remarriage, even though the remarriage was not void, but was voidable?

Section 202(g) of the Act, 42 U.S.C.A. § 402(g) provides for mother's insurance benefits and reads in pertinent part as follows:

"(g) (1) The widow * * * of an individual who died a fully or currently insured individual after 1939, if such widow * * *

"(A) has not remarried,

    *    *    *    *    *    *

"(F) * * * shall be entitled to a mother's insurance benefit for each month, beginning with the first month after August 1950 in which she becomes so entitled to such insurance benefits *and ending with the month preceding the first month in which* any of the following occurs: * * * she remarries * * *." (Emphasis added.)

The facts of this case are as follows:

In November, 1952, plaintiff applied for and was awarded mother's insurance benefits, effective October, 1952. On June 25, 1954, plaintiff married Frank Richard, informing the Social Security Administration by letter dated July 1, 1954. The marriage was entered into in California where both plaintiff and Mr. Richard resided. Payment of benefits was terminated effective June, 1954. Thereafter on November 19, 1954, the plaintiff filed a "Complaint for Annulment and/or Divorce" in the Superior Court of Santa Clara County, alleging as a first cause of action, that the defendant had fraudulently represented to the plaintiff that he intended to consummate said marriage, but in fact he never intended to, and did not consummate the marriage; and alleging as a second cause of action, that said defendant had "inflicted on plaintiff a course of conduct resulting in mental cruelty." The prayer was for an annulment of the marriage or that "said marriage be dissolved by an interlocutory judgment of divorce." No answer was filed by the defendant. The court on December 9, 1954 made and issued its "Decree of Annulment," which decree among other things, recites as follows: "Now, therefore, it is ordered, adjudged and decreed that plaintiff is entitled to an annulment; and that the marriage between the said plaintiff Gretta Richard, and the said defendant Frank Richard, be and the same is hereby declared wholly null and void from the beginning; * * *."

Thereafter plaintiff requested that the Bureau reinstate mother's insurance benefits.

The defendant has been unable to cite any cases to the court directly holding that a voidable marriage, though annulled ab initio, is a remarriage within the meaning of the Act. The plaintiff, on the other hand, has cited cases dealing with the immediate problem, with the exception that Workmen's Compensation statutes are involved instead of the Act. Eureka Block Coal Co. v. Wells, 1925, 83 Ind.App. 181, 147 N.E. 811; Southern Pacific Co. v. Industrial Commissioner, 1939, 54 Ariz. 1, 91 P.2d 700; Southern Railway Co. v. Baskette, 1939, 175 Tenn. 253, 133 S.W.2d 498; First National Bank v. North Dakota Workmen's Compensation Bureau, N.D.1955, 68 N.W.2d 661.

The conclusion to be drawn from the above cases is stated in Eureka Block Coal Co., supra [83 Ind.App. 181, 147 N.E. 812]:

"Giving the provision referred to a *broad* and liberal construction, as we must, a marriage, within the meaning of the statute, is *not* a void or *voidable* marriage which may at once be annulled, but a valid and subsisting marriage." (Emphasis added.)

The holding in First National Bank v. North Dakota Workmen's Comp. Bureau, supra, is particularly revealing as North Dakota and California have identical annulment statutes and California cases construing these statutes were held to be persuasive in North Dakota by the North Dakota Supreme Court. Quoted with approval in said case was the following language from the leading California case dealing with annulments of voidable marriages, McDonald v. McDonald, 6 Cal.2d 457, 461 P.2d 163, 104 A.L.R. 1290:

" 'A familiar analogy exists in the law of contracts. Thus a contract may be voidable and subject to rescission, because of some infirmity in its procurement, but, unless attacked by notice of rescission or by suit, will not be avoided, but will remain binding. Garcia v. California Truck Co., 183 Cal. 767, 192 P. 708. So with *voidable* marriages. The parties may or may not exercise their legal right to have them annulled, and, if they do not exercise such right, the marriages are binding; but, when annulment is sought, it can be granted only if there was some element of invalidity in the contracting of the marriage. Thus, in Millar v. Millar, 175 Cal. 796, 806, 167 P. 394, 398, L.R.A.1918B, 415, it is stated: "Strictly speaking the word 'divorce' means a dissolution of the bonds of matrimony, based upon the theory of a valid marriage, for some cause arising after the marriage, while an annulment proceeding is maintained upon the theory that, for some cause existing at the time of marriage, no valid marriage ever existed. This is true even though the marriage be only *voidable* at the instance of the injured party, or in the words used in Estate of Gregorson, 160 Cal. (21) 25, 116 P. 60, L.R.A.1916C, 697, 'capable of being annulled.' And the decree of nullity in such a proceeding determines that *no valid marriage ever existed.*" * * * ' " (Emphasis added.) [68 N.W.2d 664.]

The defendant primarily relies for authority in support of its contention that the annulled voidable marriage is a remarriage within the Act on the case of Hahn v. Gray, 1953, 92 U.S.App.D.C. 188, 203 F.2d 625, 626. In this case the widow received a pension as the unremarried widow of a veteran. This pension was discontinued when, in 1947, she was remarried. Sometime later a New York Court annulled the second marriage on the ground that it had been procured by fraud, and Mrs. Hahn thereupon applied for restoration of her pension, which application was denied by the administrator. This decision was affirmed by the District Court, which was then affirmed by the Court of Appeals.

The decision in this case is based entirely on a jurisdictional ground and that part of the decision dealing with the annulment question is entirely dicta. However, assuming for the purpose of argument that this part of the court's opinion states the law, the wording thereof differentiates the Hahn case from the instant one. The annulment in the Hahn

942

case was not an annulment ab initio, as were the annulments in this case and in the Workmen's Compensation cases cited as authority for plaintiff. Said the court in the Hahn case:

"The decree annuling Mrs. Hahn's second marriage, by its very terms, merely dissolved the marriage 'heretofore existing' between the parties; it did not purport to render the marriage *void* from its very inception. Moreover, that decree did not become effective until three months after it was handed down. The only possible conclusion is that Mrs. Hahn was legally remarried for some period of time; namely, from the date of the ceremony until three months after entry of the annulment decree."

■ It should also be noted that New York law allows a wife the right to support in an annulment action, whereas California, where the plaintiff in this action obtained her annulment, does not bestow such right. Support money cannot be given under the California law even to an innocent wife who has had her voidable marriage annulled. Millar v. Millar, 175 Cal. 797, 167 P. 394, L.R.A.1918B, 415.

The only other decision cited by the defendant based on somewhat similar facts to those in dispute here is the holding in Gaines v. Jacobsen, 1954, 308 N.Y. 218, 124 N.E.2d 290, 295. In this case the New York Court of Appeals held that the annulment of a divorced wife's remarriage did not revive the obligation of her first husband under a separation agreement requiring annual payments for her support " 'until she shall remarry' ". In so holding the court overruled its own decision in Sleicher v. Sleicher, 1929, 251 N.Y. 366, 167 N.E. 501, and explained this result by saying:

"At the time of the Sleicher decision, it was impossible for a wife to obtain alimony or other support upon annulment of a marriage; it followed inexorably, from the theory that an annulled marriage never existed, that such a marriage created no subsequent duty of support. See Jones v. Brinsmade, 183 N.Y. 258, 76 N.E. 22, 3 L.R.A.,N.S., 192. To have

held otherwise than the court did in Sleicher would, therefore, have deprived the wife in that case of any source of support whatsoever. However, since that time, the legislature has enacted section 1140-a of the Civil Practice Act, which provides that

" 'When an action is brought to annul a marriage or to declare the nullity of a void marriage, the court may give such direction for support of the wife by the husband to justice requires'.

"This new provision, respondent urges, by removing the primary and underlying motivation for the Sleicher decision, distinguishes that case from the one before us and justifies us in reaching a different conclusion. Appellant, on the other hand, contends that there is no basis for distinguishing Sleicher, and that it is dispositive of this appeal.

"While resolution of the dispute may not be easy, it is our opinion that the new enactment, after the date of the Sleicher decision, alters the situation before us so materially that it calls for a different result in this case."

It can be seen that the statutory law of New York cited in the Gaines decision, and upon which said decision is based, is different from the California law. Further, the question of whether a wife can or cannot receive support after an annulment of her marriage, has been given great significance by the New York Court.

■ As a further possible defense to plaintiff's claim defendant points out that the California annulment statute, Civil Code, § 86, provides that: "A judgment of nullity of marriage rendered is conclusive only as against the parties to the action and those claiming under them", and maintains that since the Social Security Administration was neither a party to the plaintiff's annulment action, or a party claiming under either party to said action it should not be bound by such decree. In support of this contention defendant has cited the case of Price v. Price, 24 Cal.App.2d 462, 75 P.2d 655. The principle enunciated by the statute cited above is simply that a

judgment of annulment shall not be conclusive as against third parties. This is demonstrated by the Price case. In that case the court looked behind the judgment of annulment and declared that said judgment was granted by a local court for a cause not authorized by Civil Code, § 82, and therefore a third party (her husband of the first marriage) was not bound by said decree. In the instant case, applying the law of California, and therefore looking behind the judgment of annulment, we find that the annulment *was* granted on one of the grounds set forth under Civil Code, § 86, and therefore does not warrant complaint on the part of defendant.

Defendant submits that whatever might be the effect of the annulment decree as to plaintiff's status for state law purposes, here the real question is as to her status in relation to the provisions for "mother's insurance benefits" under the Act, the applicable provisions of which in clear and unambiguous language, provide for the "ending" of such benefits "with the month preceding the first month in which * * * she remarries". Sec. 202(g) of the Act, 42 U.S.C.A. § 402(g). After reading all of the cases cited by counsel, and the sharp issues raised in their submitted briefs, it can be said that if as defendant states there be no ambiguity involved, at least "resolution of the dispute may not be easy". Gaines v. Jacobsen, supra.

■ Aside from the case law, however, policy considerations regarding this question are in the favor of plaintiff. The defendant concedes in its brief that "mother's insurance benefits" and "widow's insurance benefits" are "designed to replace an economic loss (of support) usually sustained by a wife upon the death of her wage-earner husband." In the instant case plaintiff had a right before she remarried to receive mother's benefits for the rest of her life. She entered her remarriage in good faith, and if said marriage had been valid she would have given up all rights to such mother's benefits. Certainly it cannot be said that an imposition will be made upon the Social Security Fund to allow this plaintiff, who cannot be supported by her second husband under the California law of annulment, to resume the position she held prior to this attempted remarriage. To otherwise penalize her would not seem to be in keeping with the liberal construction which has been accorded the Social Security Act, 42 U.S.C.A. § 301 et seq. In this regard the court adopts the reasoning of the case of Sleicher v. Sleicher, 1929, 167 N.E. 501, 502, applying the doctrine of "relation" [back] or "recission from the beginning", that is, the annulment when decreed, puts an end to the marriage from the beginning. It is not dissolved as upon divorce. Certainly the plaintiff should not be allowed to claim against the fund for the period of the second marriage before its annulment, and she has not done so. In this connection, the doctrine of " 'relation [back] is a fiction of law adopted * * * solely for the purposes of justice' " and that "is not * * * without limits, prescribed by policy and justice * * *." Gaines v. Jacobsen, 124 N.E.2d 290.

In accord with the foregoing it is ordered that judgment be entered herein in favor of plaintiff in accordance with Sec. 205(g) of the Social Security Act, and Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

*Supplemental Opinion.*

■ Defendant has moved for reconsideration of this court's memorandum opinion, filed on February 10, 1956, in which plaintiff was granted summary judgment. In so moving, defendant has directed attention to the recent decision of Sefton v. Sefton, 45 Cal.2d 895, 291 P.2d 439, a case not heretofore cited either by plaintiff or defendant. In that case the Supreme Court of California has decided that a former husband's right to rely on the apparent "remarriage" of his divorced wife, is paramount to the general California rule as enunciated in the case of McDonald v. McDonald, 6 Cal.2d 457, 58 P.2d 163, 104 A.L.R. 1290, which is, that an annulment

944

"relates back" and erases a marriage and all its implications from the outset. The question now before the court, is what if any is the import of the Sefton decision. Does that decision control the issue in the *instant case*, namely, when is a widow to be considered as "remarried" within the provisions of Section 202(g) of the Social Security Act?

At the outset it should be preliminarily stated that the construction of the word "remarriage" has caused some difficulty. One need but read the reported cases to realize this fact. And as with the construction of many words, depending on whether one applies a liberal or strict construction, varying results have been reached.

■ In order to determine whether or not the Sefton case is controlling herein, one must analyze the reasoning of the California Supreme Court in arriving at its decision. The court stated [45 Cal. 2d 895, 291 P.2d 441] that it feared that the first husband still living might be prejudiced, that he was entitled to rely upon his former wife's "apparent marital status" and thus be free to "recommit his assets previously chargeable to alimony to other purposes." The court, after applying the test for determining whether the doctrine of "relation back" appertained,[1] concluded that it did not, because the law "look[s] less favorably upon the *more active of two innocent parties when by reason of such activity a loss is sustained as the result of the misconduct of a stranger.*"

Immediately it is apparent that the rationale of the Sefton decision is that the innocent divorced husband had the right to rely on his wife's holding herself out as "remarried", as otherwise his rights might be prejudiced. In the court's view no such prejudice appears in the instant case, and for this reason

the Sefton case is not in point. After all, plaintiff is an innocent party who will lose rights she otherwise would have enjoyed except for a third party's misconduct. An exception should not be made to the California rule of "relation back" so as to deprive an innocent plaintiff of Social Security benefits at least where, as here, it is clear that defendant has not been prejudiced. Plaintiff's benefits did not arise because of divorce but because of the death of her husband, Delbert Pearsall. The payments which he made into the Social Security Fund were completed at his death and in no way can be increased. Defendant has stood ready under the Social Security Act to pay plaintiff the benefits she was entitled to as the mother of her first husband's child. Whatever funds were available for dispersal before plaintiff's attempted "remarriage" are still available. No California case has been cited to the court wherein the word "remarriage", appearing in a beneficent type statute, e.g., Workmen's Compensation, has been construed.

The courts of other jurisdictions, when considering the word "remarriage" as used in statutes similar to the liberally construed Social Security statutes, have reinstated benefits, and have not considered voidable marriages which have been annulled ab initio as "remarriages" within the meaning of the statutes construed. Eureka Block Coal Co. v. Wells, 1925, 83 Ind.App. 181, 147 N.E. 811; Southern Pacific Co. v. Industrial Commissioner, 1939, 54 Ariz. 1, 91 P.2d 700; Southern Railway Co. v. Baskette, 1939, 175 Tenn. 253, 133 S.W.2d 498; First National Bank v. North Dakota Workmen's Compensation Bureau, N.D.1955, 68 N.W.2d 661.

In accord with the foregoing, the court upon reconsideration of the issues in this case affirms the judgment.

1. "The test for determining the applicability of the doctrine as applied to voidable marriages is whether it effects a result which conforms to the sanctions of sound policy and justice as between the immediate parties thereto, their property rights acquired during that marriage and the rights of their offspring."