ROBERTSON *v.* WINCHESTER.

## (*Knoxville.*   October 20th,  1886.)

1. JURISDICTION OF SUPERIOR COURT.   *Intendment as to.*

Nothing shall be intended to be out of the jurisdiction of a Superior Court; but that which specially appears to be so.

Case cited and approved: Hopper *v.* Fisher, 2 Head, 253–256.

2. SAME.   *Collateral attack of decree.   Irregularities.*

The decrees of a Superior Court are valid, on collateral attack, notwithstanding irregularities in the proceedings, if it appear in the record that the Court acquired jurisdiction of the person of the defendant and of the subject matter of litigation.

Cases cited and approved: Doyle *v.* Smith, 1 Cold., 16–23; Stanley *v.* Crippin, 1 Head, 115; Cornelius *v.* Merritt, 2 Head, 98–99; Mitchell *v.* McKinney, 6 Heis., 83.

3. SAME.   *Same.   Publication.   Proved by recitals.   Pro Confesso.*

In such case, if the defendant is a non-resident, jurisdiction of the Court over his person is sufficiently shown by recitals in orders on rule docket that publication was made, and in subsequent decree that the cause was heard on order *pro confesso;* or, in the absence of all other evidence, by the mere recital in the final decree, that the cause was heard on order *pro confesso*, as it would be presumed such order was made upon publication as required by law.

Code cited: ₰ 5102 (M. & V.), ₰ 4359 (T. & S.)

Cases cited and approved: Mitchell *v.* McKinney, 6 Heis., 87; Allen *v.* Gilliland, 6 Lea, 532–3; Claybrook *v.* Wade, 7 Cold., 556–7; Walker *v.* Cottrell, 6 Bax., 261; Netherland *v.* Johnson, 5 Lea, 34?; Martin *v.* Porter, 4 Heis., 415; Gilcrease's Heirs *v.* Blythe, 6 Hum., 389–90; Gilchrist *v.* Cannon, 1 Cold., 587; Kyle *v.* Phillips, 6 Bax., 45; Sparks *v.* White, 7 Hum., 91–2; Hopper *v.* Fisher, 2 Head, 253–4.

4. SAME. *Same. Non-resident. Misnomer. Idem sonans. Ellett and Elliott.*

In proceedings against a non-resident defendant, the Court acquires jurisdiction of his person, and a decree rendered against him is valid on collateral attack, although he may have been incorrectly named in the proceedings; if his true name and that by which he was called in such proceedings are *idem sonans.* Ellett and Elliott are *idem sonans.*

Cases cited and approved: Williams *v.* Ogle, 2 Strange., 889; 2 Ired., 346.

5. SAME. *Application of purchaser at judicial sale. New parties. Land in another county.*

Where, in the exercise of its proper jurisdiction, the Chancery Court of one county has decreed the sale of lands lying in another county, and the purchaser at such sale, before payment of the purchase-price or termination of the suit, has filed a supplemental bill making certain persons defendants, who were not parties to the original proceeding, seeking to have divested out of them the legal title to said lands, or to have his purchase rescinded for failure of title, the Court acquired jurisdiction of the supplemental bill, and a decree thereon, divesting out of said new parties, the title to said lands and vesting it in the purchaser, is valid, on collateral attack, although they were proceeded against as non-residents and did not appear or make defense.

Code cited: §§ 3105, 5054, sub-sec. 4 (M. & V.), §§ 2267, 4311, sub-sec. 4 (T. & S.)

Cases cited and approved: Deadrick *v.* Smith, 6 Hum., 138–9; Hart *v.* Czapski, 11 Lea, 154; Birdsong *v.* Birdsong, 2 Head, 301–2; Alexander *v.* Perry, 4 Hum., 391; Winchester *v.* Winchester, 1 Head, 461.

6. CONSTRUCTION OF ORDER OR DECREE. *"Defendants." Name omited.*

An order or decree in a cause against or referring to "defendants" in general terms embraces all defendants, whether named therein or not.

Case cited and approved: Wilson *v.* Nance, 11 Hum., 191–z.

Robertson *v.* Winchester.

7. ESTOPPEL.   *Laches.   Non-resident.*

If the owner of land, with knowledge that it has been sold, under decree of Court, as the property of another, acquiesces in that sale for ten years, during which the purchaser has paid the purchase-price and enjoyed the possession of the land, he will be estopped to set up his title; and no less stringent rule will be applied to a non-resident than to a citizen.

FROM   HAMILTON.

Appeal from Chancery Court of Hamilton County. May Term, 1884.   W. M. BRADFORD, Ch.

BARTON  &  SON, and DODSON · & MOONE, for Complainant.

ELDER  &  WHITE, and WHEELER  &  MARSHALL, for Defendant.

SNODGRASS, J.    On the 10th November, 1868, C. C. Hudson died in New York intestate, the owner of certain real estate in Gibson, Weakley, Knox, and Hamilton Counties, Tennessee.

Administration was granted on his estate in the County Court of Gibson County in June, 1869, and soon thereafter—August 19th, 1870—the administrator, Needham Holland, Spiral Hill, John P. Hudson, John Wetherford · and Mary Wetherford, and A. F. Hurt, filed the first bill it is necessary

to notice in this cause against Charles E. Hudson, Thos. H. and Mary Elliott, and P. Y. Hudson.

The bill alleged the death of Hudson as stated, the qualification of complainant, Needham Holland, as administrator, and that the other complainants were creditors, with amount of their several debts, and that Complainants Hudson and Mary Wetherford, and Defendants C. E. Hudson and Mary Elliott were the only heirs-at-law, and Defendant P. Y. Hudson the widow of C. C. Hudson, deceased. It alleged the exhaustion of the personalty in payment of just debts, and sought to subject the real estate described for such purpose. Among the real estate thus sought to be and subsequently sold were the lots in Chattanooga now in controversy.

The bill alleged that "Mary H. Elliott was the wife of Thos. H. Elliott, and both were non-residents, as well as C. E. and P. Y. Hudson," and prayed that "Chas. E. Hudson, Mary and Thos. H. Elliott, and P. Y. Hudson be made parties defendant, and that publication be made for them to answer, etc.; that the real estate described be sold to pay the debts, and for appropriate relief."

No order for publication nor proof of actual publication appeared in the record, nor is it recited in *terms* that publication was in fact made for Thos. Elliott or P. Y. Hudson. But it appears that P. Y. Hudson answered, and there is a judgment for confessed in the record as follows:

Robertson *v.* Winchester.

"NEEDHAM HOLLAND, Adm'r, *et al.*,

*vs.*

"CHAS. E. HUDSON, MARY H. ELLIOTT,

"PRISCILLA Y. HUDSON.

"And it appearing to the Clerk and Master that publication had been made for *defendants* to appear and answer, and Defendants Chas. E. Hudson and Mary H. Elliott having failed to plead, answer, or demur within the time allowed by law, it is therefore ordered by the Court that the bill be taken for confessed, and set for hearing *ex parte* as to said two defendants.

"J. A. McDEAMON."

The entries upon the rule docket are as follows:

| DATE. | SOLICITORS. | PARTIES. | NATURE OF BILL. | SECURITIES. |
|---|---|---|---|---|
|  | Spiral Hill. | Needham Holland, adm'r of C. C. Hudson, Spiral Hill, John P. Hudson, Mary E. Wetherford, John Wetherford, Augustus Hurt, *v.* Chas. E. Hudson, Mary H. Elliott, P. Y. Hudson. | O. Bill. |  |

Robertson *v.* Winchester.

CHANCERY COURT, TRENTON, TENNESSEE.

| | PROCESSES, RULES, ORDERS, ETC. | DISPOSITION. |
|---|---|---|
| August 19th. | Bill filed. | |
| August 30th. | Publication made. | |

This is followed in the transcript by decree of January 26th, 1871, in which it is recited that the cause came on to be heard upon bill, order *pro confesso*, answer of P. Y. Hudson, and proof.

This decree was for a reference to the Master to ascertain whether the personalty had been exhausted and the existence of past debts in favor of complainants, and for all the purposes of this case, it is sufficient to say here that such report was made and confirmed without exception, sale of the lots in Chattanooga now in controversy ordered, and made on the 6th of May, 1871, and A. F. Hurt became the purchaser at the price of $3,240, executing two notes therefor for $1,620 each, payable in ten and twenty months from date of sale (the first one being credited with $65 paid cash thereon at date executed); that this sale was reported and confirmed without exception February 3d, 1872, and title divested and vested in the purchaser.

The second bill in this cause, called a supplemental bill, was filed the 11th of July, 1872, by the purchaser, A. F. Hurt, Needham Holland, administrator, John P. Hudson, John P. Wether-

ford and wife, Mary E. Wetherford, and the widow of P. Y. Hudson, against "all the defendants to the first bill, except those joining in this" (Mrs. P. Y. Hudson was the only defendant to the other bill, who joined in this, and hence the bill was filed against Thomas H. and Mary Elliott, and Charles E. Hudson), and against certain other parties, who were named, viz.: Richard S. Robertson, Robert W. Pendleton, J. T. Atterbury, and —— Pulliam, who were alleged to be non-residents.

This bill recited the proceedings in the original cause and showed that Hurt became the purchaser of the Chattanooga lots now in controversy, and that the title of Chas. C. Hudson had been invested in him; that he had paid a full price for the same and executed his notes to the special commissioner, as shown in his report (before referred to), believing that he was getting a perfect title; that he has since discovered that the title was not altogether in C. C. Hudson, but was in him and Richard S. Robertson, Robt. W. Pendleton, J. T. Atterbury, and —— Pulliam.

The complainants further charged that Chas. C. Hudson was the owner in equity, and that the other defendants had a bare legal title, with no beneficial interest whatever; that Chas. C. Hudson purchased and paid for the interest of the other parties in said lots before his death, and they should have conveyed the legal title to him, but if this was ever done complainants do not know it, and the deed (never registered) was lost, but

that Chas. C. Hudson was entitled to the sole legal title, complainants prayed to be allowed to file this as a supplemental, or amended bill, in the original cause now pending against Chas. E. Hudson *et al;* that Chas. E. Hudson and all the defendants to the original bill, not here made complainants, together with Richard S. Robertson, Robt. W. Pendleton, J. T. Atterbury, and —— Pulliam, be made defendants, and publication made for them, etc., and that they answer, etc., and that the title to said lots be divested out of them, said Robertson, Pulliam, Atterbury, and Pendleton, and vested in Augustus F. Hurt, the purchaser, etc., in same manner as the title of Chas. C. Hudson was so invested, etc., and for such other and further relief as in equity may belong.

Neither of these bills had any caption in which the names of defendants were set forth; but the defendants were either named, or, as in this one, named and shown by description as defendants in the other bill, and from such description we have set forth the names in a former part of this opinion—that is, Thos. H. and Mary Elliott, Chas. E. Hudson, R. S. Robertson, Robt. W. Pendleton, J. T. Atterbury, and —— Pulliam, all alleged to be non-residents.

The complainants did not charge, in terms, that the purchase-notes were unpaid, but they referred to and recited the proceedings in the other cause, showing that they were given on the 6th of May, 1871, due ten and twenty months from date; and

as this bill was filed on the 11th of July, 1872, it was filed before the last note was due, and non-payment is inferred.

Neither did the bill, in terms, pray for a rescission of the sale; but as such relief was within the scope of the prayer for general relief under the facts, it may be treated as including this in considering hereinafter the question of jurisdiction involved.

In this case the transcript does not show any order for publication, proof of publication, nor is the fact that publication was made anywhere recited in any order or decree appearing in the transcript, which has no copy of any order or entry on the rule docket, if any were made.  But the final decree in the case, pronounced December 21st, 1872, recites "that the case came on for hearing before the Chancellor upon bill, answer, orders *pro confesso*, exhibits, proof (reports) of Clerk and Master, interlocutory decree, and supplemental bill, and *orders pro .confesso*, and proof, when it appeared to the Court" that Hurt had purchased the Chattanooga lots in controversy and the sale had been confirmed; and "it further appeared to the Court from the amended or supplemental bill in this case, *orders pro confesso*, and proof that one Richard S. Robertson, and —— Pulliam, and Robert. W. Pendleton, and J. T. Atterbury heretofore claimed some interest in said three lots in Chattanooga, but it now appears to the Court that before the death of Chas. C. Hudson, who purchased their several in-

terests in said lots, and at his death he was the
sole equitable owner thereof, it is therefore ordered
and decreed by the Court that all right, title, claim
of interest any one or all of said parties may have
or appear to have in said lots in Chattanooga be,
and the same is hereby, divested out of them and
vested in the said Augustus F. Hurt, the afore-
said purchaser, subject, however, to a lien retained
for the unpaid purchase-money owing from him in
this case.

This decree does not, as appears, recite that pub-
lication had been made. But, as the bill was filed
on the 11th of July, 1872, and the decree was
pronounced on the 21st of December, 1872, it af-
firmatively shows that sufficient time had elapsed
for publication, and it affirmatively shows that
judgments *pro confesso* had been taken, as they
might legally have been.

The effect of this recital upon this showing will
be considered further on.

This record stated comes collaterally in question
in two aspects in the case now before us.

The defendant, R. S. Robertson, on the 16th
March, 1881, filed a bill in the Chancery Court of
Hamilton County against the purchasers of the
Chattanooga lots—A. F. Hurt, Winchester, *et al.*—
seeking to recover a half interest in said lots, re-
citing the proceedings in Gibson County, and aver-
ring his interest, and that the Court had neither
jurisdiction of his person or the subject matter of
the litigation, as the lots were in Hamilton County.

He charges that he "knew nothing of the pendency of said proceedings until a few months since, when his attention was called to the fact by his agent in Chattanooga, occasioned by developments growing out of proceedings instituted by the Trustees of the Cincinnati Southern Railway to subject a part of said lots to their use as their right of way."

Answers were filed asserting defendants' claim under this record and its validity. In this way the record is involved respecting its validity as to Robertson.

In the other case contained in this voluminous transcript it is brought in question upon the decree divesting title out of the heirs of C. C. Hudson upon a bill filed by Thos. H. and Mary *Ellett* against Winchester, Hurt and others claiming, in right of Mrs. Ellett, all of said lots as the adopted daughter of said Hudson, or, if mistaken in her right to all as heir by adoption, then one-sixth as niece. The complainants charge that Defendant Winchester is in possession, except of that portion occupied by the defendants, trustees of the Cincinnati Southern Railway Company, under a title-bond —the vendee of A. F. Hurt, who had some kind of title—all of which are illegal and void, and a cloud on complainants' title. They seek to have these titles declared void, and to be restored to the possession of the land, etc. This bill was filed February 15th, 1881.

Hurt and Winchester answer and rely upon the record in the cause in Gibson County, referred to

as having divested out of complainants and vested in Hurt, all the interest which *Ellett* and wife had in the lots in controversy, they being the same parties made defendants in said cause as Thos. *Elliott* and wife.

On the hearing the Chancellor dismissed the bill of Ellett and wife, sustained that of Robertson, and decreed a recovery of one-half interest in the lots in his favor.

Ellett and wife and A. F. Hurt appealed.

The Commission of Referees heard the cause and report in favor of affirmance of the decree, with slight modification as to taxes and costs.

Exceptions are filed to the report, and the questions involved, as stated, are before us for determination.

Proceeding to dispose of them in the order they arise, we agree with the Chancellor and the Commission in dismissing the bill of Ellett and wife.

They made two objections to the decrees of the Chancery Court of Gibson County:

*First*—That they were not before the court in that cause, *Ellett* and *Elliott* being different persons. They are clearly the same—*idem sonans.* 2 Str. R., 889; 2 Ired., 346.

*Second*—Assuming that they are bound as Thos. H. and Mary Ellett if the decrees were valid, they insist that the decrees were void because it does not appear that process was served upon them, that their appearance was entered, or that

publication was made for them, and therefore the court had no jurisdiction of their persons.

We have shown—and how—they were made defendants to both bills recited. We have shown that by entry on the rule docket and order of the Clerk and Master it appeared that publication had been made. In the entry and the order Thos. H. Ellett's name is not *written;* but this is immaterial, as an order or judgment in a cause against or referring to "defendants" in general terms refers to all defendants, whether named or not. *Wilson et al.* v. *Nance et al.,* 11 Hum., 191, 192.

Neither the entry on the rule docket nor the order states for what time publication had been made, nor that it had been made according to the statute; but this is presumed in favor of the correctness of the proceedings and decree of a court of general jurisdiction, as was this, in a collateral questioning of its record, as is this one. 2 Head, 253, 256.

Had neither entry nor order appeared in the transcript, the recital in the final decree that the cause was heard upon order *pro confesso* would have been sufficient, as it would be presumed that the order *pro confesso* was made upon publication as required by law.

It does not matter that no answer or plea for Ellett and wife appears in the transcript, nor formal judgment for confessed. The absence of these does not render the decree void. *Doyle* v. *Smith,* 1 Cold., 16–23; *Stanly* v. *Crippin,* 1 Head, 115,

116; *Cornelius* v. *Merritt*, 2 Head, 98, 99; *Mitchell* v. *McKinney*, 6 Heis., 83.

This is the rule where the case is brought up on writ of error. It of course applies with more force on a collateral attack, where the record does not come before the Court for review.

The only question in such case is, did the Court have jurisdiction of the parties and the subject matter? If so, the decrees are valid without reference to irregularities.

In all cases it must appear that the Court had this jurisdiction. In cases of bills against non-residents the best evidence that jurisdiction of the person was acquired is the production of the order of publication and proof that it was published in a newspaper authorized and required to publish it for four successive weeks. This may appear by affidavit of the printer or actual production of the newspaper in Court. Code, § 5102.

Such evidence is of course admissible in all cases, but it need not be made where the record comes collaterally in question. In that case it may be proven in several different modes.

A judgment *pro confesso* appearing in the record, in which it is recited that publication was made in a newspaper for four successive weeks, in accordance with an order of the Court, requiring defendants to appear and make defense at a given term, is sufficient proof that publication was made.

And it is immaterial whether this is made on the minutes of the Court or at rules by the

Robertson *v.* Winchester.

Master. *Mitchell* v. *McKinney*, 6 Heis., 87; *Allen* v. *Gilliland*, 6 Lea, 532–3.

But if the judgment *pro confesso* does not *show* all these facts of publication it will still be sufficient evidence of publication if it *recite* that publication was made according to law. *Claybrook* v. *Wade*, 7 Cold., 556–7; *Allen* v. *Gilliland*, 6 Lea, 532.

Or that publication was *duly* made, or regularly made. *Walker* v. *Cottrell*, 6 Bax., 261; *Netherland* v. *Johnson*, 5 Lea, 342; *Martin* v. *Porter*, 4 Heis., 415.

So if publication is recited as having been made, it will be presumed to have been made according to law. *Kilcrease's Heirs* v. *Blythe*, 6 Hum., 389–90.

And, finally, if no judgment *pro confesso* appears, and it is recited in the final decree that publication has been made, this is sufficient. *Gilchrist* v. *Cannon*, 1 Cold., 587; *Kyle* v. *Phillips*, 6 Bax., 45.

Or if there is no recital of publication, or of the terms of any judgment *pro confesso*, and the final decree recites that the cause was heard on judgment *pro confesso*, it will be presumed that a regular judgment for confessed was taken; that that judgment recited publication according to law, and that publication was in fact made according to the presumed recitals. *Kilcrease's Heirs* v. *Blythe*, 6 Hum., 389–90; *Sparks* v. *White*, 7 Hum., 91–2; *Mitchell* v. *McKinney*, 6 Heis., 87.

Our Court has gone very much further than this, and held that in a collateral attack of this character, if the Court had jurisdiction of the subject-matter and assumed to have jurisdiction of the parties as (in that case) of minor defendants (a guardian *ad litem* having answered), the jurisdiction of the persons will be presumed, although the transcript did not contain any order of appointment of a guardian *ad litem*, or any summons to answer showing actual jurisdiction. *Hopper* v. *Fisher*, 2 Head, 253–4.

These conclusions established and determined, settle all the questions made in the cause of *Robertson* v. *Winchester*, except the question as to the jurisdiction of the subject-matter, and this, we think, the Court clearly had.

It would not be disputed that the Court would have had jurisdiction had Robertson been made a party to the original bill. Code, §§ 3105, 4877; *Alexander* v. *Perry*, 4 Hum., 391; *Winchester* v. *Winchester*, 1 Head, 461.

Before that cause terminated by the collection of the money and adjustment of the rights of all the parties, his interest is discovered, and by a supplemental bill he is brought before the Court to divest him of an interest, which, if the statements of the supplemental bill be true (and they are admitted by the judgment for confessed), it was proper and necessary to do so in order to sell the land for debts of Hudson, and vest a perfect title in the purchaser. This was only

partly done by the original proceedings, and to complete it, and do entire justice in the premises to the Hudson estate and the purchaser, the supplemental bill was necessary and proper. Code, § 5054, sub-sec. 4; *Ib.,* § 3578; *Hart* v. *Czopski,* 11 Lea, 154; *Birdsong* v. *Birdsong,* 2 Head, 301–2.

In another aspect it was a correct assumption and exercise of jurisdiction. The notes of the purchaser are not paid. The cause was pending for their collection.

The purchaser could only obtain relief before the Court where the cause was pending. *Deadcrick* v. *Smith,* 6 Hum., 138–9.

And if he desired to inquire into the real ownership, he might, in consequence, make the alleged legal owner of the equitable title, or the partly legal and partly equitable title complainant had acquired in that suit, a party, in order that complete justice might be done with all parties in interest in the Court.

In several of the cases referred to it is held that the Chancery Court, being a court of superior jurisdiction, nothing shall be intended to be out of its jurisdiction but that which specially appears to be so, and it is clear that nothing appears in the record of the cause of *Holland, Administrator,* v. *Hudson et al.,* which affirmatively shows that the Court did not have jurisdiction, and that the decrees are void.

It appears, too, in the evidence in this cause, that although Robertson, in his bill, denies actual

notice of that proceeding, he did have such notice before the sale to Hurt, and received from his agent a copy of the advertisement of the sale. He took no steps to prevent it, or to assert his rights, if he had any at that time, and until the filing of this bill he has allowed the purchasers to remain in undisturbed possession of the property.

He was very needy, according to his own testimony, and if he had any real interest in the property, would, doubtless, long since, have asserted it. That he was in Hudson's debt to some amount is not controverted, and we think it must have been because of the knowledge that this indebtedness to his partner was greater than his interest, or because they had arranged it between them so that Hudson was to keep this property, or apply it on the debts, that he never asserted any claim to it sooner.

At all events, for ten years he has, with knowledge of the sale, acquiesced in it, and must be held bound by it. Had he lived in Gibson or Hamilton Counties, and stood by with notice for this time without asserting his claim, we think no one would argue that he could now successfully assert it. There is no reason why a less stringent rule should be applied in his favor as a non-resident, than would be applied to one of our own citizens.

The report should be set aside, decree reversed, and bills dismissed, at cost of the respective complainants.