GLOBE & REPUBLIC INS. CO. OF AMERICA *v.* SHIELDS.

(*Knoxville*, September Term, 1936.)

Opinion filed October 17, 1936.

A. Y. Burrows, of Knoxville, for plaintiff in error.

S. E. Hodges and Atchley & Simpson, all of Knoxville, for defendant in error.

MR. JUSTICE DEHAVEN delivered the opinion of the Court.

On June 7, 1932, the Globe & Republic Insurance Company of America issued to Mrs. A. D. Shields a policy of fire insurance to the amount of $1,500, covering a one-story dwelling house located at 222 Price street, Knoxville. The term of the insurance was three years. On June 2, 1931, the Republic Fire Insurance Company issued its policy of fire insurance to Mrs. Floss Shields (being the same person as Mrs. A. D. Shields), to the amount of $1,500, covering household goods located at 222 Price street.

On January 8, 1934, the insured house was burned down to the foundation, and the insured household goods to the value of $2,000 were destroyed. On refusal of the insurer to pay the loss, suits were instituted on the respective policies. The two companies having consolidated, the suits were tried together and the subject matter of the litigation treated as the obligation of the consolidated company.

The trial in the circuit court of Knox county resulted in verdicts and judgments in favor of the plaintiff, Mrs. Shields, in the sum of $1,500 on the policy on the house, and $1,000 on the policy on the household goods. The defendant appealed to the Court of Appeals, and that court affirmed the judgments of the trial court. The case is now before this court on the petition for *certiorari*, filed by the insurance company, which has heretofore been granted and the case set down and argument heard.

The questions made by the assignments of error may be referred to as follows:

First. That Mrs. Shields was not the sole and uncon-

ditional owner of either class of property. As to the dwelling house, it appears that A. D. Shields, husband of the insured, being the owner of the real estate in question, conveyed it to one W. A. Carroll, in the year 1925, retaining a vendor's lien to secure the unpaid balance of the purchase price. Carroll erected a building on the property and became involved in mechanics' liens asserted against the property, which resulted in the filing of a general lienors' bill in the chancery court of Knox county. The lien claims amounted to about $1,400, and there was due A. D. Shields a balance of $570, secured by a vendor's lien. The property was brought to sale by order of the court, and at the sale A. D. Shields bid the same in at $1,845, and was allowed a credit for the amount due him. On July 28, 1927, A. D. Shields having paid the remainder of the purchase price, the clerk and master made a deed conveying the property to him, and the title was standing in his name at the time of his death in May, 1931.

On December 1, 1934, Mrs. Shields filed her bill in the chancery court of Knox county against the heirs at law of her husband, A. D. Shields, wherein she alleged that she and her husband purchased the property jointly as tenants by the entirety, and through error the deed thereto was made to her husband alone. The bill prayed that the deed be reformed so as to show the conveyance to both the complainant, Mrs. Floss Shields, and her husband, A. D. Shields. Personal service of process was had on three resident defendants, and process by publication on all nonresident defendants. The three resident defendants answered and waived any rights they might have in the property. *Pro confesso* was taken as to the

nonresident defendants. The cause came on for final hearing on February 28, 1935, upon the pleadings, *pro confesso*, "the oral proof of witnesses produced in open court," and upon the whole record. From all of which the chancellor found and decreed, among other things:

". . . It was the contract, understanding and agreement between the complainant and her said husband at all times that said property was to be the joint property of complainant and her said husband, and that they were to hold the same as tenants by the entireties; that at and about the time of said sale, and for sometime thereafter the complainant was teaching school and earning considerable money herself, and that she paid the greater portion of said purchase money notes; that both the complainant and her said husband were out of the city at the time said property was sold by the court and neither was present, but said property was purchased by an agent and representative of the complainant and her said husband, and that by accident and mistake he bid off said property in the name of complainant's said husband alone, when the same should have been bid off in the name of A. D. Shields and wife Floss Shields according to the understanding between complainant and her said husband; that afterwards the Clerk & Master executed a deed for said property to A. D. Shields according to the bid; that the complainant never knew that said deed had not been made to herself and her said husband jointly until a few weeks ago when she was called upon by her attorney to produce said deed in connection with other litigation, when she discovered that said deed was made to her said husband alone. . . . The Court is, therefore, of the opinion that under the facts of this case

said deed should be reformed so as to make it speak the truth.

"It is, therefore, ordered, adjudged and decreed by the Court that said deed be, and the same hereby is reformed as prayed by the complainant, and that the vendees in said deed read 'A. D. Shields and wife Floss Shields,' and that said deed stand accordingly so reformed as of the original date of said deed, to wit, the 28th day of July, 1927, and that said property was owned by the complainant and her said husband as tenants by the entireties from the date of said deed to the date of the death of the complainant's said husband, to wit, the 1st day of May, 1931," etc.

█ If the court had jurisdiction of the subject matter of the suit and of the parties, its decree awarding reformation is not open to attack by petitioner in the instant case. *Robertson* v. *Winchester*, 85 Tenn., 171, 1 S. W., 781. This principle is too well established to call for further citation of authority. Unquestionably, the court had jurisdiction of the subject matter of the suit. Did it have jurisdiction of the parties? Three of the defendant heirs at law of Mr. Shields resided in Knox county and were personally served with process. The nonresident defendants and those whose residence was unknown to complainant were brought in by publication. Code, section 10431. Under Code, section 10388, the cause may be maintained in any county where a material defendant resides. We think that the court had jurisdiction of the parties to the suit, and that its decree allowing reformation is immune to collateral attack.

██ It is insisted by petitioner that the chancellor heard no proof in the reformation suit. The decree recites that the cause was heard "upon oral proof of wit-

nesses produced in open court.'' The decree imports absolute verity, and its recitations are not open to contradiction on collateral attack. But, if the decree had been supported by no proof, it would have been erroneous and not void, the court having jurisdiction of the parties and the subject matter of the suit. *Life & Cas. Ins. Co.* v. *Clark*, 165 Tenn., 219, 54 S. W. (2d), 965.

It is next insisted that petitioner here had no notice of the reformation suit and was not made a party thereto, and hence the decree is invalid as to it. This contention, we think, is without merit. Petitioner had no right, title, or interest in the land, and was not a necessary or proper party to the suit.

The chancellor having found from the proof that it was the understanding and agreement between Mr. and Mrs. Shields that title should be taken in their joint names as tenants by the entirety, it was proper, of course, to allow reformation. *Alexander* v. *Shapard*, 146 Tenn., 90, 240 S. W., 287. The land was the property of Mrs. Shields when the insurance sued for was procured, Mr. Shields having died prior thereto. The reformation of the deed from the clerk and master to Mrs. Shields had the effect, between the parties, as though originally made in its reformed condition. ''The change is made *nunc pro tunc*, and the reformed instrument becomes the only evidence of the original instrument.'' Gibson's Suits in Chancery, section 946. However, had Mr. Shields, or his heirs at law, conveyed the real estate to an innocent purchaser before reformation, such purchaser would have taken title. *Behrn* v. *White*, 108 Tenn., 392, 396, 67 S. W., 810. But the property was not so conveyed. Petitioner here, the mere insurer of the property against loss by

fire, does not stand in the position of an innocent purchaser.

The policy sued on says nothing about record title, but does provide that it shall be void "if the interest of the insured be other than unconditional and sole ownership, or if the subject of insurance be a building on ground not owned by the insured in fee simple." Under the deed, as reformed, the interest of Mrs. Shields in the house and land measured up to that required by the policy of insurance. Her representation of ownership was neither false nor fraudulent.

■ With reference to the insured household goods, it appears that Mrs. Shields had placed two chattel mortgages thereon. One mortgage was for $144 and one for $100, which had been paid down to $85 at the time of the fire. The policy of insurance provides:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void . . .; or if the subject of insurance be personal property and be or become incumbered by a chattel mortgage."

No agreement with reference to either of the above-mentioned chattel mortgages is indorsed on or added to the policy.

The existence of a mortgage or other lien upon insured property has been held not to amount, prior to foreclosure, to a breach of a condition in a policy that the insured's interest shall be unconditional and sole ownership. *Hughes* v. *Miller's Mut. Fire Ins. Co.,* 147 Tenn., 164, 246 S. W., 23, 28 A. L. R., 797. In the instant case, however, the parties to the contract agreed that the policy should be void if the personal property insured

"be or become incumbered by a chattel mortgage." This agreement must, of course, be given force and effect. The result is that by reason of the chattel mortgages the policy on the personal property became void under its express stipulations. The judgment of the trial court and the decree of the Court of Appeals affirming the same for $1,000 for loss on the household goods must be disallowed.

Second. It is insisted by assignments of error that Mrs. Shields did not file notice and proofs of loss within the time mentioned in the policy. Without discussing in detail the facts shown in the record as to these matters, suffice it to say that there was some material evidence from which the jury could find compliance with the provisions of the policies with respect to notice and proofs of loss.

Third. It is next insisted that the insured did not offer trustworthy proof of damages to the dwelling and household goods. We think there was an abundance of material evidence to support the verdict of the jury in this connection.

The result is that the judgment for $1,500 for the loss of the dwelling is affirmed. The judgment for $1,000 for the loss of the household goods is reversed, and the suit on the policy covering the household goods is dismissed.

Petitioner and Mrs. Shields will each pay one-half of the costs of the case.