SOUTHERN RY. CO. *v.* BASKETTE.

(*Knoxville,* September Term, 1939.)

Opinion filed November 25, 1939.

254

COOKE, SWANEY & COOKE, of Chattanooga, for plaintiff in error.

WOOD & DIETZEN, of Chattanooga, for defendant in error.

MR. SPECIAL JUSTICE W. T. KENNERLY delivered the opinion of the Court.

The plaintiff below, Maggie Baskette, is the widow of John Baskette, deceased. She seeks a recovery under the Workmen's Compensation Law. Her husband was accidentally killed on May 5, 1936, while in the employ of the Railway Company. When injured, he was performing duties for his employer within the scope of his em-

ployment, and the Workmen's Compensation Act, Code 1932, section 6851 et seq., applied.

Shortly after her husband's death, the Railway Company acknowledged its liability and began making payments to the widow at the rate of $12.55 per week. These payments continued without interruption until May, 1938.

On May 19, 1938, the widow married one H. C. Davis. On May 25, 1938, she voluntarily visited the Railway Company's Law Agent at Chattanooga and advised him of her remarriage, of which he had theretofore received notice from another source. She told him she was happily married to a good man, and requested payment of the sum which had accrued between the date of her last payment and the date of her marriage, $14.72. This amount was paid her, making the total amount paid her as the beneficiary of her husband, $1451.12. She had no dependent children.

As a prerequisite to making the payment of $14.72, the Company's Law Agent took her to the office of the Railway Company's attorney, where she executed certain receipts and releases, and the payment was made.

One release which she signed recited that it was in consideration of $14.72, "in full payment of account as stated below". The statement below was in these words:

"It is hereby acknowledged that this is the final payment due me as widow of the above deceased on account of my marriage to H. C. Davis May 19, 1938, and there being no dependent children surviving the said John Baskette, I here now acknowledge full and final satisfaction of my claim against the Southern Railway Company on account of the death of John Baskette."

She at the same time executed a more formal release, stating the consideration therefor was the payment of

$14.72 then made, which "with weekly payments already received by the said Mrs. H. C. Davis, makes the total sum of $1451.12, in full settlement of compensation under the Workmen's Compensation Act of Tennessee on account of death resulting to John Baskette . . . said compensation dating from May 9, 1936, to May 18, 1938, and being in the amount of $1451.12. And it is agreed and understood that all claims for compensation for the before mentioned death under the Workmen's Compensation Act of Tennessee are this day paid in full and final settlement is herewith acknowledged. This agreement being subject to review and approval of the Judge of the Circuit Court, where the claim for compensation under this Act is entitled to be made."

The plaintiff below at that time had not conferred with counsel and was not represented by counsel. It shortly thereafter developed that instead of being happily married to Mr. Davis, the marriage proved a failure. Plaintiff below sought legal advice, and on June 8, 1938, filed a suit in the Circuit Court of Hamilton County seeking an annullment of the marriage. In her petition she averred she was sixty-five years of age and her husband, Mr. Davis, forty-two; that Davis, believing she had a considerable sum of money on hand, persuaded and enticed her to enter into the marriage, and "fraudulently and falsely represented to her that he was a man of considerable means; that he had large real estate holdings in the State of Mississippi, had a good job, and was well able to support her and to provide for her in lieu of the monthly payments that she was receiving under the Tennessee Workmen's Compensation Act."

She further charged that immediately after the marriage she learned Davis cared nothing for her, and was only after her money. He then began to demand that

she turn over to him her money and property, and she learned he had no funds whatever, had no job and no property, and had falsely and fraudulently misrepresented his financial status with intention of deceiving her, and by reason of her advanced age and physical and mental condition, overreached her and persuaded her to marry him. She averred there had been no normal marital relations established between them, and they had separated about ten days after marriage following the defendant's failure to provide for her, and after he had abused and mistreated her and had turned her out of doors.

The prayer of the petition was for a decree ''nullifying the alleged marriage on the grounds of fraud and misrepresentation, or in the alternative, let the petitioner be granted an absolute divorce and be restored to all the rights and privileges of an unmarried woman.'' The bill was properly verified by affidavit.

Defendant Davis was served with process and filed an answer denying the charges of the bill.

During the hearing of the annullment suit the plaintiff therein amended her bill, averring Davis had been guilty of such cruel and inhuman treatment or conduct toward her as rendered it unsafe and improper for the parties longer to cohabit together, or for her to remain under his dominion and control. This amendment to the bill was allowed by a minute entry as if made on the face of the bill. The order provided that the answer theretofore filed by the defendant should apply to the bill as amended. This amendment was not formally verified by the plaintiff's affidavit.

The Circuit Judge entered judgment in favor of the plaintiff therein, in which he found and held ''that the defendant Harry Columbus Davis entered into a mar-

riage with the petitioner and secured her consent thereto by fraud and misrepresentations, well knowing that he married said petitioner for no other purpose but to get the control and possession of certain money that petitioner had; that said marriage was never in fact consummated by marital relations, and the defendant abandoned petitioner or turned her out of doors, and has refused and neglected to provide for her; that he was guilty of such cruel and inhuman treatment or conduct toward petitioner as would render it unsafe and improper for the parties to longer cohabit together, or for her to remain under his dominion and control, all of which was charged in the original bill and amply sustained by the proof.'' It was further adjudged: ''This is a proper case wherein said marriage should be annulled and for nothing held, and being of the opinion that the annulment of said marriage rather than a divorce is discretionary, and that this is a proper case wherein said marriage should be annulled, it is decreed that the marriage heretofore entered into between the petitioner, Maggie Baskette Davis, and the defendant Harry Columbus Davis, be and the same hereby is in all things annulled and for nothing held, and the parties are hereby restored to the same and exact status as though said marriage ceremony had never been performed.'' There was no appeal from this judgment and the same became final.

Shortly thereafter plaintiff below made formal demand upon the Railway Company for payment of the compensation which had accrued after May 18, 1938. This request was refused and this suit instituted.

The death of John Baskette as heretofore stated was averred in the petition, and that payments had been made to the plaintiff under the Tennessee Compensation Law

until plaintiff's marriage to Davis. The filing of and the judgment in the annulment case were averred. It was also averred that on May 25, 1938, she had been induced to sign the receipt and release aforesaid, which were procured from her when she was mistaken as to the facts of the case and was not fully informed as to the nature of her legal status; that she was not represented by counsel, and the said alleged compromise had not been ratified or approved by the Judge of the Circuit Court as required by the Workmen's Compensation Act and as provided in the release.

She then avers that as a result of the annulment suit "she is and has always been dependent upon her husband, John Baskette, for her support, and that by reason of the annulment of said marriage to Davis, she was by said decree restored to the status of widow and dependent of said John Baskette, and was and is now entitled to a restoration of the compensation payments due her by reason of his death."

She prays for a decree awarding her compensation, and for the restoration of payments thereof as of the date payments were discontinued.

The Railway Company answered, admitting the payment made on May 25, 1938, and pleading accord and satisfaction as set out in the receipt and release aforesaid. It denies that the receipt and release was procured from her when she was mistaken as to the facts of the case, and not informed as to the nature of her legal status. The answer admits that no legal proceedings were had in any court for ratification and approval of the so-called settlement. It denies that by reason of the annulment of her marriage to Davis she was restored to her original status as the widow of Baskette, so far as defendant was concerned.

The answer was filed a cross-bill, seeking the Court's ratification and approval of the so-called settlement of May 25, 1938.

The Circuit Judge awarded the plaintiff a recovery at the rate of $12.85 a week, which was to continue for the remainder of the term of four hundred weeks, or until she had been paid $5,000, plus $100 funeral bill, the same to be credited by the $1,451.12 theretofore paid her. The cross-bill was dismissed. Defendant's motion for a new trial was overruled, and it prayed, was granted and has perfected its appeal to this Court. It assigns the following errors:

1. There was no evidence to sustain the judgment and the evidence preponderates against the judgment.

2. It was error to restore to petitioner compensation as the widow of John Baskette, because she had entered into a legal marriage with Davis, was estopped to deny the validity thereof, and she had executed a valid and binding release.

3. It was error to hold that her marriage to Davis was void from the beginning, and by this marriage her right to compensation was not terminated.

In support of these assignments it is claimed the Circuit Court was without jurisdiction in the annulment suit, and this is especially true because the amendment to the annulment bill was not sworn to as required by Section 8431 of the Code. It is further claimed the allegations of fraud practiced upon the plaintiff in the annulment suit were insufficient in law to support the judgment therein.

We do not think these attacks made upon the annulment decree are sound. If the Circuit Court did not have jurisdiction of the annulment suit, the judgment in that suit can be collaterally attacked. If it did have

jurisdiction, and the defendant therein was before the Court, the judgment cannot be collaterally attacked by a third party.

▇ In this connection it will be noted that the judgment of the Circuit Judge therein was based entirely upon the original bill, and not upon the bill as amended, its averments being that Mrs. Baskette's consent to this marriage was procured by fraud and misrepresentation, and for the purpose of obtaining possession of her money, etc., etc., "all of which was charged in the original bill and amply sustained by the proof." The Court then annuls the marriage, exercising its discretion so to do rather than grant a divorce. The discretion which the Circuit Judge exercised of annulling the marriage rather than granting a divorce is given by Section 8443 of our Code, "If, upon hearing the causes, the court is satisfied that the complainant is entitled to relief, it may be granted either by pronouncing the marriage void from the beginning, or by dissolving it forever and freeing each party from the obligations thereof, or by a separation for a limited time."

▇ Defendant below further insists that as the suit sought equitable relief—that is, the annulment of the marriage, the Circuit Court was without jurisdiction, sole jurisdiction being in the Chancery Court. This is unsound.

The jurisdiction of our Circuit Court is statutory. Section 10329 of our Code gives our Circuit Court jurisdiction of suits of an equitable nature. This section is as follows:

"Any suit of an equitable nature, brought in the circuit court, where objection has not been taken by demurrer to the jurisdiction, may be transferred to the chancery court of the county, or heard and determined

by the circuit court upon the principles of a court of equity, with power to order and take all proper accounts, and otherwise to perform the functions of a chancery court." Code, section 10329; *Sewanee Min. Company* v. *Best & Company,* 40 Tenn. (3 Head), 701, 702.

The defendant Davis filed no demurrer in the annulment suit. Therefore, jurisdiction continued in the Circuit Court.

██ ██ The insistence that there was no evidence to support the judgment in this case because the petition for annulment did not charge sufficient facts to justify the judgment annuling the marriage, is not sound. This constitutes a collateral attack upon a judgment of a court which had jurisdiction of the parties and of the subject matter of that suit. If any error was committed by the court in that case, it could only be corrected by appeal. However, we hold that the petition for annulment in *Davis* v. *Davis*, did charge sufficient facts to base thereon the judgment entered in that case.

The rule of law above referred to is thus succinctly stated in Corpus Juris under the title "Marriage":

"a decree annuling a marriage is final and conclusive, and not subject to collateral impeachment, although it may be opened or vacated, for good cause, on a proper application. Except where the statute otherwise expressly provides, the decree of nullity relates back so as to render the relation of the parties illegal from the beginning, and to restore the parties to their former status and to all rights of property as before the marriage." 38 C. J., page 1361, Section 139.

██ The legal effect of the judgment in the annulment suit was to render this voidable marriage a nullity—that is, judicially declare that it never had been a legal and lawful marriage. This is in accord with the de-

cisions of most of the States. The rule is thus correctly stated in a New Jersey case:

"The distinction between a marriage absolutely void, or one voidable at the election of one or both of the parties, is important; that in the case of the latter the marriage will be treated as valid and binding until its nullity is ascertained and declared by a competent court in a suit instituted for that purpose, during the lifetime of both parties; but the effect of a sentence of nullity, when pronounced, is to render the marriage null and void from the beginning. It appears, therefore, that, in either case, when a decree of nullity is pronounced, the status of the parties is as though they had never been married, and the result in the last analysis is the same." Steerman v. Snow, 94 N. J. Eq., 9, 118 A., 696, 698.

We hold there is ample evidence to sustain the judgment of the Circuit Court in the instant case.

■ The next question to be considered is the validity of the alleged release which defendant below insists was an accord and satisfaction. The Circuit Judge heard oral testimony and refused to hold this release binding upon the plaintiff. We think his holding was correct.

The release was without consideration. It is admitted that on May 25, 1938, when this alleged release was executed, defendant below justly owed her the sum of $14.72 compensation which accrued between the date of the last payment and the date of Mrs. Baskette's remarriage. It is further admitted that the amount theretofore paid her, with the payment then made, $1451.12, had all been paid her upon just claims.

The question of the termination of compensation of a widow who has entered into a void or voidable second marriage has never been directly passed upon by this Court in a reported opinion. The question was before

the Court in *Oliver* v. *Perkins Oil Company*, 168 Tenn., 278, 77 S. W. (2d), 454. In that case the widow had entered into a second marriage, which it was alleged was void because the party whom she married then had a living wife from whom he was not divorced. The suit was instituted three years after compensation benefits had ceased to be paid. This court held the Statute of Limitations of one year applied and a recovery was denied on that ground, without passing upon the other question.

All questions in this suit as to the right of a widow to collect compensation where her second marriage had been annulled were in the case of *Eureka Block Coal Company* v. *Wells*, 83 Ind. App., 181, 147 N. E., 811, 813, decided by the Appellate Court of Indiana.

Mrs. Wells was the widow of an employee of the Coal Company who had met accidental death. Compensation had been awarded her by the Industrial Board of Indiana, and had been regularly paid until she entered into a second marriage with one McCormick. She lived with McCormick ten days and left him, claiming that he had procured her to enter into the marriage through fraud. She filed her annulment suit against McCormick and prevailed therein.

During this ten day period the Coal Company paid her $3.77 in full of all accrued compensation to date of marriage, and took a receipt and release reciting that the Company had paid her $1,244.57 ''in full settlement of compensation agreed on—awarded me under the provisions of the Indiana Workmen's Compensation Act as a dependent of James Wells, who died on January 19, 1922.''

She brought suit against the Coal Company to recover compensation after her marriage to McCormick had been

annulled. The same defenses were interposed by the Company as in this case, and the decision was in favor of the widow. In holding the plaintiff not bound by this release, and holding it was not an accord and satisfaction, the Court used this language:

"It cannot be said by appellant that by the alleged settlement with appellee it was misled to its disadvantage. Appellant merely paid to appellee the balance due her under the original award to the date of the marriage. The reinstatement adds nothing to appellant's liability as fixed by the original award. Appellee's receipt, under the circumstances, was not conclusive of the facts recited therein."

That the judgment annulling the marriage related back to the date of the marriage and made it void from the beginning was a correct holding. It is in line with the holdings of this Court in similar cases. In the case of *Globe & Republic Insurance Company* v. *Shields*, 170 Tenn., 485, 487, 96 S. W. (2d), 947, this Court had before it the validity of an insurance policy upon a dwelling house. The policy was written in the name of Mrs. A. D. Shields. The deed to the property was in the name of the husband, A. D. Shields, who died before the issuance of the policy. The Insurance Company defended on the ground that Mrs. Shields was not the owner of the property insured.

Before suing the Insurance Company, she had filed a suit in the Chancery Court to reform the deed and have it so corrected as to be a deed to herself and her husband, creating an estate by the entirety. She prevailed in this suit and the deed was so corrected.

In the suit against the Insurance Company it was held that the reformation of this deed related back to its date, and that in fact when the policy was issued, Mrs.

266

Shields was the owner of the property as the survivor. *Globe & Republic Insurance Company* v. *Shields,* 170 Tenn., 485, 491, 96 S. W. (2d), 947.

■ The settlement and the alleged release evidencing it under our Workmen's Compensation Statute had to be approved by the Circuit Court before it became binding. It is so provided in the Statute. It was so provided in the release. This necessity is recognized in the cross-bill filed by defendant below. It was never so approved by the Circuit Court, and is not valid, and thus is not binding between the parties. Code, Section 6877.

All errors assigned are overruled and the judgment of the Circuit Court affirmed with cost.